12-CV-05403-CMP

FILED ___ LODGED
___ RECEIVED
AUG 23 2012
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGION
## AT TACOMA

| | |
|---|---|
| GEORGE O. MITCHELL, Pro se, <br><br> Plaintiff; <br><br> Vs. <br><br> STATE of WASHINGTON, <br><br> Kelly J, Cunningham, Special Commitment Center, Superintendent, Dr. Thomas Bell, Randal Griffith, P.A., and Christine Haueter Dietitian <br><br> Defendant, | NO. C12-5403 BHS/KLS <br><br> FIRST AMENDED <br> CIVIL RIGHTS COMPLAINT <br> Title 42 U.S.C. §1983, <br> Title 42 U.S.C. §1997, <br><br> SUPPLEMENTAL AND PENDENT JURISDICTION 28 U.S.C. § 1367(a) |

## PRELIMINARY STATEMENT

1.1 This is a Civil Rights Complaint brought by George O. Mitchell Plaintiff, pro se, who is currently housed in a Washington State Department of Social and Health Services' treatment facility, pursuant to orders of detention/commitment, issued by a Washington State Superior Court, for treatment and confinement. Plaintiff is not a 'prison inmate, nor is Plaintiff serving a sentence imposed by a court upon conviction of criminal offenses.

---

NOTE: Plaintiff reserves the right to amend this complaint as the names of additional culpable persons are made known to Plaintiff, or counsel therefore, through discovery, and those additional persons named through discovery are indicated as willing actors regarding subject mater herein. 28 U.S.C. § 1367(a).

COMPLAINT FOR MEDICAL

-1-

George Mitchell, Pro se, Plaintiff
P.O. BOX 88600
Steilacoom, WA 98388-0600

1  Plaintiff seeks both preliminary and permanent injunctive relief, declaratory judgment, alleging
2  denial of adequate medical care in violation of the Fourteenth Amendment to the constitution.

## II. JURISDICTION

2.1 Plaintiffs cause of action and claims for relief are filed under the authority established within Title U.S.C. § 1983; and 42 U.S.C. § 1997 et seq. Plaintiff also seeks to invoke the Supplemental and Pendent Jurisdictions of this Court, pursuant to 28 U.S.C. § 1367(a), regarding claims of violation of Washington State statutory law, to redress injuries suffered by Plaintiff, and deprivation of rights, privileges, and immunities, under color of State law, but not limited thereto.

2.2 Those Rights secured under the Fourteenth Amendment to the United States Constitution, but not limited thereto.

2.3 Further, this Court has jurisdiction over each claim and the authority to grant relief as deemed appropriate to correct the various violations committed, under Section 2, Article III, of the United States Constitution.

2.4 All claims arise directly under the Fourteenth Amendment to the United States Constitution,

2.5 Accordingly, jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and § 1343(1), (3) and, (4). Additionally Plaintiff seeks to invoke the Supplemental and Pendent Jurisdictions of this Court for all violations of Washington State statutory law, and official policies, as the violations arise from the same nucleus of conduct which have violated federally protected rights of Plaintiff, and the laws of the United States.

### III. VENUE

3.1   Pursuant to, and in accordance with, 28 U.S.C. § 1391(a), venue is proper. Both Plaintiff, and Defendant herein, reside within the geographical jurisdiction of the above entitled Court, coupled with all allegation of volatile conduct of Plaintiffs' federally protected rights, and the statutory laws of the United States, and the State of Washington did so occur within the same geographical jurisdiction of this Court.

### IV. PARTIES

4.1 Plaintiff George Mitchell is presently being involuntarily detained to the care and custody of Department of Social and Health Services pursuant to RCW 71.09 and presently is confined at the Special Commitment Center.

4.2 Defendant Kelly Cunningham was employed by the Washington State Department of Social and Health Services as the Superintendent of the Special Commitment Center during the time of the Constitutional violations. Although Defendant Cunningham is no longer the Superintendent of the Special Commitment Center, Defendant Cunningham had supervisory authority, responsibility for the administration, operations of Special Commitment Center; for promulgating, approving, and implementing all Special Commitment Center policies, practices and procedures, including the issue in this action; for training all Special Commitment Center personnel; and for the care, custody and treatment of Plaintiff. Defendant Cunningham directly participated in the denial of the constitutional rights of Plaintiff by directly participating in and/or approving the development and implementation of the policies and procedures challenged herein. He is sued in his individual and official capacities.

4.3   Defendant Dr. Thomas Bell, , was employed by the Washington State Department of Social and Health Services and was the Medical Supervisor at the Special Commitment Center

during the time of the Constitutional violations. Although Defendant Bell is no longer the Medical Supervisor of the Special Commitment Center, Defendant Bell had supervisory authority, responsibility for the medical administration, operations of Special Commitment Center medical clinic; for promulgating, approving, and implementing all Special Commitment Center medical policies, practices and procedures, including the issue in this action; for training all Special Commitment Center medical personnel; and for the care, custody and treatment of Plaintiff. He is sued in his individual and official capacities.

4.4 Defendant Randall Griffith, a licensed ARNP was employed by the Washington State Department of Social and Health Services at the Special Commitment Center. Although Defendant Griffith is no longer the Medical Supervisor of the Special Commitment Center, Defendant Griffith had supervisory authority, responsibility for the medical administration, operations of Special Commitment Center medical clinic; for promulgating, approving, and implementing all Special Commitment Center medical policies, practices and procedures, including the issue in this action; for training all Special Commitment Center medical personnel; and for the care, custody and treatment of Plaintiff. He is sued in his individual and official capacities.

4.5 Defendant Christine Haueter a licensed Dietitian was employed by the Washington State Department of Social and Health Services at the Special Commitment Center. Although Defendant Haueter is no longer the licensed Dietitian of the Special Commitment Center, Defendant Haueter had supervisory authority, responsibility for providing medical diets for the residents with eating disorders, special diets, food allergy, and for the care, custody and treatment of Plaintiff. He is sued in his individual and official capacities.

## VI. STATEMENT OF FACTS

5.1 On December 14, 2000, Mr. Tony Wilson informed Plaintiff that he tested positive for Hepatitis C.

5.2 On January 3, 2001, Plaintiff provided another blood sample to be sent to Smithkline Beecham clinical Laboratories to reaffirm the first test.

5.3 It was affirm Plaintiff had contacted Hepatitis C virus.

5.4 On June 4, 2002, Plaintiff was transported to Tacoma Digestive Disease Center for a consultation with W. Michael Priebe, MD.

5.5 Dr. Priebe did a Physical examination, Plaintiffs vitals were: Weight: 244 pounds, blood pressure: 154/100, pulse: 90.

5.6 On October 8, 2002, Dr. Priebe performed a liver biopsy on Plaintiff.

5.7 On February 10, 2003, Dr. Priebe scheduled an Offices Visit with Plaintiff to discuss the biopsy results, and treatment options.

5.8 Dr. Priebe and Plaintiff agreed to delay starting interferon/ribavirin until Plaintiff had a chance to lose some weight and get into better physical shape to endure the physical toll of the interferon/ribavirin, PEG-Intron another treatment medication for Hepatitis C is weight based. And possibly get off the or reduces the antihypertensive medications.

5.9 On Jun 14, 2003 Christopher Flowers, M.D. informed the Special Commitment Center: Should Plaintiff so desire in the future, Plaintiff may return to clinic for discussion of initiating treatment.

5.10 On April 12, 2005, Dr. Priebe scheduled another consultation with Plaintiff.

5.11 Plaintiff weight had dropped from 244 to 214 pounds.

5.12 Plaintiff vitals were: Blood pressure 132/60 and pulse 64.

5.13 Plaintiff informed Dr. Priebe that he ran 3 to 5 miles four times a week.

5.14  Plaintiff wanted to lose a little more weight before starting treatment.

5.15  On December 28, 2008 I sent a letter to Ms. Kim Deiteh RN 3 outlining Nutritional issue for people with hepatitis C from "The Complete Encyclopedia of Natural Healing" Plaintiff received no rely.

5.16  Plaintiff cc Ms. Deiteh letter to: The Honorable Katherine Stolz, Att. Whitener, Lynn & Writt, Susan Dreyfus Secretary of DSHS, Rob McKenna Attorney General, and Blake char Secretary of DSHS.

5.17  On March 2, 2009 Linda Shipman Judicial Assistant to Judge Katherine M. Stolz replied informing me Judge Stolz read the letter I sent to Ms. Deiteh.

5.18  On February 5, 2009, the Attorney General Rob Mckenna reply informing Plaintiff that he had taken the liberty of referring plaintiff letter to Dr. Thomas Bell the Medical Supervisor at SCC.

5.19  On May 6, 2009 Plaintiff met with Defendant Bell, to go over the results of a previous blood test, which confirmed Plaintiff Hepatitis 'C' virus was getting worst.

5.20  During this meeting Plaintiff specifically told Defendant Bell, that Plaintiff wanted to start the injection of Interferon & Ribavirin.

5.21  Plaintiff explained to Defendant Bell that he was remarried and Plaintiff did not want to infect his wife with the Hep 'C' Virus.

5.22  Defendant Bell said that it would not matter if Plaintiff took the injection of Interferon & Ribavirin, that Plaintiff would still have the Hep 'C' virus in his system.

5.23  Defendant Bell told Plaintiff "treatment doesn't work on African-Americans that Plaintiff had a 30% chance success rate and that treatment was expensive in previous meetings.

5.24 Plaintiff informed Defendant Dr. Bell, he seen other African Americans at SCC, like Kimya Simon, who, like Plaintiff had genotype-1 Hepatitis C, and resident Rudy Franklin, both completed the treatment and are doing well, so why can't I?"

5.25 Defendant Bell said; "treatment is very hard on the body besides, you're healthy."

5.26 Plaintiff told Defendant Bell he disagreed with him, starting treatment while Plaintiff's body is still healthy would provide a better chance of successfully completing the rigorous twelve month treatment regiment, rather than wait until Plaintiff's body is weakened by cirrhosis of the liver caused by the Hepatitis C, thereby creating multiple complications and possible death.

5.27 Defendant Bell shrugged his shoulders, "I am not recommending you for Hep-'C' treatment."

5.28 Approximately late July 2010, Plaintiff spoke with Ms. Deiteh, RN3, about the letter I sent her dated December 28, 2008, detailing the nutritional needs for people with Hepatitis 'C'.

5.29 Ms. Deiteh informed Plaintiff that she did not remember to whom she sent the letter but that she would sign Plaintiff up to see Defendant Randall Griffith ARNP and Ms. Christine Haueter dietitian.

5.30 In early August 11, 2010, Plaintiff spoke with Defendant Randall Griffith ARNP.

5.31 Plaintiff informed Defendant Griffith about conversation with Defendant Bell on May 6, 2009 in detail.

5.32 Defendant Griffith abruptly changes the subject, and started talking about a new drug he wanted Plaintiff to take called "Amlodipine," which is used to bring down blood pressure.

5.33 Plaintiff informed Defendant Griffith that Plaintiff didn't want to add another drug to the three he was already using, because of the possible damage it may do to Plaintiff's liver.

COMPLAINT FOR MEDICAL -7- George Mitchell, Pro se, Plaintiff
P.O. BOX 88600
Steilacoom, WA 98388-0600

1  5.34  Plaintiff suggested a nutritional diet consisting of freshly cooked food, and vitamins,

2          reducing processed and canned foods with salt additives, and if this were provided,

3          Plaintiff could do the rest with exercise.

4  5.35  Defendant Griffith said he could only recommend certain diets like low sodium, or a 2200

5          hundred calorie diet, as he did not have the authority, as a licensed ARNP, to order

6          Defendant Temposky (Food Services Manager), to provide Plaintiff with nutritional diet

7          to reduce the damage to Plaintiff's liver.

8  5.36  On 8/18/10 Plaintiff met with Defendant Christine Haueter (Dietitian).

9  5.37  Again Plaintiff informed Defendant Haueter about the conversation with Defendant Bell

10         on May 6, 2009 and Defendant Griffith on August 11, 2010.

11  5.38  Plaintiff asked Defendant Haueter to start Plaintiff on a nutritional diet to reduce damage

12          to Plaintiff liver and to control his blood pressure.

13  5.39  Defendant Haueter told Plaintiff that Defendant Temposky controls the kitchen and what

14         diets are allowed SCC residents.

15  5.40  Defendant Haueter stated she knew of residents with dietary health issues that she wanted

16         to assist, but her hands were tied, because Defendant Temposky runs the kitchen.

17  5.41  Defendant Haueter suggested Plaintiff buy his own vitamins and food from Albertson's

18         Market.

19  5.42  On October, 24, 2010 Plaintiff provided Dietician Haueter with a copy of the letter sent

20         Ms. Kim Deiteh RN 3 in December 28, 2008.

21  5.43  Plaintiff received a reply letter from Defendant Haueter dated September 8, 2010. Ms.

22         Defendant Haueter's letter was informative but it was basically the same information

23         Plaintiff had submitted to her, with no resolution to Plaintiff's serious medical condition

24         and reasonable concerns.

5.44 On September 26, 2010 Plaintiff submitted a Resident grievance regarding Plaintiff's serious medical condition and concerns.

5.45 This letter from Defendant Cunningham did <u>not</u> specifically address the real concern, i.e. the Hepatitis 'C' virus and the needed medical treatment for that virus.

5.46 On December 26, 2010, Plaintiff wrote a formal Complaint and sent it to Defendants Kelly Cunningham and to Becky Denny, SCC Legal Coordinator. No reply has yet been received to that entreaty.

### VII. CLAIMS FOR RELIEF

6.1 The failure of Defendants Kelly Cunningham to provide treatment for diagnosed conditions of Hepatitis-C after plaintiff informed Defendant Cunningham he was being refused treatment by Defendant Bell, and Defendant Griffith, constitutes deliberate indifference to the plaintiff's serious medical needs in violation of the Plaintiff fourteenth amendment of the United States Constitution

6.2 The failure of Defendants Kelly Cunningham to investigate enough to make an informed judgment by reviewing Plaintiff medical record, were Defendant Cunningham would have discovery that Dr. Priebe and Plaintiff agreed to start interferon/ribavirin treatment after Plaintiff lose some weight because the treatment medication for Hepatitis C is weight based, this constitutes deliberate indifference to the plaintiff's serious medical needs in violation of the Plaintiff fourteenth amendment of the United States Constitution

6.3 The actions of Defendant Bell interfering with Plaintiff access to treatment by refusing to send Plaintiff out to Dr. Priebe to start treatment constitutes deliberate indifference to the plaintiff's serious medical needs is in violation of the Plaintiff fourteenth amendment of the United States Constitution

6.4 The actions of Defendant Bell refusing to send Plaintiff out to Dr. Priebe because the treatment doesn't work on African American, constitutes deliberate indifference to the plaintiff's serious medical needs in violation of the Plaintiff fourteenth amendment of the United States Constitution

6.5 The actions of Defendant Bell refusing to send Plaintiff out to Dr. Priebe because the treatment was to expensive, constitutes deliberate indifference to the plaintiff's serious medical is needs in violation of the Plaintiff fourteenth amendment of the United States Constitution

6.6 The actions of Defendant Bell refusing Plaintiff treatment but providing Hepatitis –C treatment to other residents with the same genotype as Plaintiff constitutes deliberate indifference to the plaintiff's serious medical needs in violation of the Plaintiff fourteenth amendment of the United States Constitution

6.7 The failure of Defendant Griffith, P.A to take action in Plaintiff behalf by intervening, and or informing his Superior or out side state agency about medical abuse to Plaintiff concerning Plaintiff serious medical conditions constitutes deliberate indifference to plaintiff's serious medical needs in violation of the Plaintiff fourteenth amendment of the United States Constitution

6.8 The failure of Defendant Griffith, P.A to take action after Plaintiff told him that Defendant Bell refused to treat Plaintiff for his serious medical conditions because it was to expensive, constitutes deliberate indifference to the plaintiff's serious medical needs in violation of the Plaintiff fourteenth amendment of the United States Constitution

6.9 The failure of Defendant Randal Griffith, P.A to take action after Plaintiff told Defendant Griffith that Defendant Bell refuse Plaintiff treatment because treatment doesn't work on

African-Americans constitutes deliberate indifference to the plaintiff's serious medical needs in violation of the Plaintiff fourteenth amendment of the United States Constitution

6.10 The failure of Defendant Haueter ( dietitians) to take action in Plaintiff behalf by providing nutritional diets for Plaintiff serious medical conditions constitutes deliberate indifference to plaintiff's serious medical needs in violation of the Plaintiff fourteenth amendment of the United States Constitution

6.11 The actions of Defendant Randal Griffith in refusing to override Paul Temposky, SCC Food Services Manager and provided a medical diet for Plaintiff serious medical conditions constitutes deliberate indifference to plaintiff's serious medical needs in violation of the Plaintiff fourteenth amendment of the United States Constitution

6.12 The actions of Defendant Haueter ( dietitians) in refusing to override Paul Temposky, SCC Food Services Manager and provided a medical diet for Plaintiff serious medical conditions constitutes deliberate indifference to plaintiff's serious medical needs in violation of the Plaintiff fourteenth amendment of the United States Constitution

**6.13** The failure of Defendant Haueter ( dietitians) to take action in Plaintiff behalf by intervening, and or informing her Superior or out side state agency about medical abuse to Plaintiff concerning Plaintiff serious medical conditions constitutes deliberate indifference to plaintiff's serious medical needs in violation of the Plaintiff fourteenth amendment of the United States Constitution

## VIII. PRAYER FOR RELIEF

WHEREFORE, plaintiff George O. Mitchell prays this Court will grant the following relief:

7.1 Declaratory judgment, that Defendants have violated the Constitutional rights, protections and guarantees of Plaintiff under the United States Constitution;

7.2 Declaratory relief establishing Defendant's have violated Plaintiff's rights to adequate medical care and treatment, all as detailed herein.

7.3 Grant and order for Plaintiff to provide Medical Care and Treatment for His Hepatitis 'C' condition.

7.4 Injunctive relief mandating Defendants must provide adequate medical care and medications to SCC residents, [Plaintiff] when such are clearly indicated by blood or other tests showing Hepatitis 'C' or other viral infections.

7.5 Grant Permanent Injunctive relief to Plaintiff enjoining Defendants, their agents or successors, from: (1) Further violating standard and ethical medical practices, treatment and procedures afforded Plaintiff, all in order to prevent further injury, harm, and retaliation toward Plaintiff.

7.6 Grant Permanent Injunctive relief establishing Defendants and the Special Commitment Center medical staff, must abide by and adhere to all professional medical standards and practices established in the relevant medical and scientific communities, necessary for the treatment of Hepatitis 'C' or similar viral infections.

7.7 Compensatory damages, for injuries and injustices suffered by Plaintiff George O. Mitchell at the hands of defendants

7.9 Punitive damages for deprivations/violations of (protected) Federal and State Constitutional rights.

1  7.10  Award unspecified monetary damages to be established and awarded by a jury, pertaining
2         to punitive damages, compensatory damages, pain and suffering, mental, emotional and
3         physical damages and:
4  7.11  For just and equitable relief as the Court deems appropriate to correct and compensation for
5         injuries intentionally inflicted on Plaintiff
6  7.12  Grant Unspecified damages for Plaintiff to be determined at trial.
7  7.13  May this Honorable Court award such further relief as the Court deems just and proper.
8         I George O. Mitchell swear under penalty of perjury the foregoing statements made in the
9         above civil rights complaint are true and correct to the best of my own personal
10        knowledge, and are sworn to in accordance with 28 U.S.C. § 1746.

12  Respectfully submitted this 21 day of August, 2012.

George O. Mitchell, Plaintiff, Pro se
P.O. BOX 88600
STEILACOOM, WA 98388-0647