UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

GEORGE O. MITCHELL,

                Plaintiff,

   v.

STATE OF WASHINGTON, KELLY J. CUNNINGHAM, THOMAS BELL, RANDALL GRIFFITH, CHRISTINE HAUETER,

                Defendants.

No. C12-5403 BHS/KLS

**REPORT AND RECOMMENDATION**
**Noted for: June 21, 2013**

Before the Court is Defendant Randall Griffith's Motion for Summary Judgment. ECF No. 43. On April 18, 2013, Defendants provided Plaintiff with a notice consistent with *Woods v. Carey,* 684 F.3d 934, 935, 940-41 (9th Cir. 2012). ECF No. 45. Defendants' summary judgment motion was noted for May 17, 2013 and Plaintiff's response should have been filed by May 13, 2013. Plaintiff's response, dated May 17, 2013, was filed on May 20, 2013. ECF No. 61. Defendant Griffith moves to strike Plaintiff's response as untimely. ECF No. 62.

Although it was filed a few days beyond the deadline, Plaintiff was responding not only to Defendant Griffith's motion, but also to a second motion for summary judgment filed by the remaining defendants (State Defendants) (ECF No. 46), which has since been re-noted for August 23, 2013. ECF No. 64. Defendant Griffith also argues that the documents attached to Plaintiff's response should be stricken because his evidence contains hearsay and violates numerous Rules of Evidence. ECF No. 62, pp. 2-3. However, Defendant has not specified what evidence is objectionable and why. Keeping in mind that evidence at the summary judgment

REPORT AND RECOMMENDATION- 1

stage must be either admissible evidence or evidence that could be presented in admissible form at trial (Fed.R.Civ.P. 56(c)(2)), the Court has considered Plaintiff's entire response.

Based on the Court's review of the motions, opposition, summary judgment evidence, and balance of the record, the Court concludes that Defendant Griffith's motion for summary judgment should be granted and Plaintiff's claims against Defendant Griffith be dismissed.

## FACTS

**A.     Sworn Allegations in Amended Complaint**[1]

Plaintiff George O. Mitchell is a resident of the Special Commitment Center (SCC) operated by the Washington State Department of Social and Health Services at McNeil Island. Mr. Mitchell was civilly committed to the SCC as a sexually violent predator in April of 2003. *In re Detention of Mitchell*, 160 Wash.App. 669, 672, 249 P.3d 662, 662 (Div. 2, 2011). In his First Amended Complaint, Mr. Mitchell alleges that defendants violated his civil rights by failing to adequately treat his Hepatitis C. ECF No. 9, ¶¶ 6.1 – 6.13. Mr. Mitchell alleges that he tested positive for Hepatitis C in December 2000 and that during 2002 and 2003, he was receiving treatment at the Tacoma Digestive Disease Center with Dr. W. Michael Priebe. *Id*., ¶¶ 5.1 – 5.7.

In February 2003, Dr. Priebe and Mr. Mitchell agreed to delay interferon/ribavirin treatment until after Mr. Mitchell lost weight. *Id.*, ¶ 5.8. In April 2005, Mr. Mitchell had lost thirty pounds, but he wanted to lose some more weight before starting treatment. *Id*., ¶¶ 5.10 – 5.14. On December 28, 2008, Mr. Mitchell sent a letter to Kim Deitch, RN 3 "outlining nutritional issues for people with hepatitis C." He received no reply. *Id*., ¶ 5.15. On May 6,

---

[1] Where the nonmoving party is *pro se*, a court must consider as evidence in opposition to summary judgment all contentions "offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [the party appearing pro se] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (citation omitted), *cert. denied*, 546 U.S. 820, 126 S. Ct. 351, 163 L.Ed.2d 61 (2005).

REPORT AND RECOMMENDATION- 2

2009, Mr. Mitchell met with Defendant Bell to review his blood tests, which confirmed that Mr. Mitchell's hepatitis C was getting worse.  Mr. Mitchell asked Defendant Bell to start injections of interferon and ribarvirin. Defendant Bell refused, stating that African-Americans have a 30% success rate, the treatment was expensive, the virus would still be in his system, Mr. Mitchell was healthy, and that the treatment is hard on the body.  Mr. Mitchell disagreed with Defendant Bell and argued that he would have a better chance of completing the rigorous twelve month treatment while he was healthy.  Defendant Bell refused to recommend Mr. Mitchell for the treatment.  *Id.*, ¶¶ 5.19 – 5.27.

In late July 2010, Mr. Mitchell asked Nurse Deitch about the letter he sent to her on December 28, 2008.  She signed him up to meet with Randall Griffith ARNP and Ms. Christine Haueter, a dietician.  On August 11, 2010, Mr. Mitchell told Defendant Griffith about his May 6, 2009 conversation with Defendant Bell.  According to Mr. Mitchell, Defendant Griffith changed the subject and started talking about a new blood pressure medicine.  Mr. Mitchell told Defendant Griffith that he did not want to add to the three he was already taking because of possible damage to his liver.  *Id*., ¶¶ 5.15, 5.20, 5.27, 5.32.  Mr. Mitchell asked Defendant Griffith to recommend a "nutritional diet consisting of freshly cooked food, and vitamins, reducing processed and canned foods with salt additives…".  *Id*., ¶ 5.34.  Defendant Griffith told Mr. Mitchell that he could recommend a low sodium or 2200 calorie diet, but that he lacked authority to direct Paul Temposky[2], the food services manager, to provide Mr. Mitchell with the diet he was requesting.  *Id*., ¶ 5.35.

Based on the foregoing allegations, Mr. Mitchell contends that Defendant Griffith should have intervened and informed his superior or an outside agency that Mr. Mitchell was being

---

[2] Plaintiff refers to Paul Temposky as "Defendant Temposky," however Paul Temposky is not named as a defendant in the First Amended Complaint.

REPORT AND RECOMMENDATION- 3

subjected to medical abuse. He contends that Defendant Griffith should have taken action after Mr. Mitchell told him that Defendant Bell was refusing to treat him. He also contends that Defendant Griffith should have "overridden" the food services manager and provided Mr. Mitchell with a "medical diet." ECF No. 9, pp. 10-11.

**B.    Facts Relating to Medical Care Provided by Defendant Griffith**

Randall Griffith is a licensed healthcare practitioner. He earned his ARNP in 1999 and a doctorate in nursing practice (DNP) in 2010. ECF No. 44, Declaration of Randall Griffith, at p. 1. Between January 2004 and December 2011, he was employed as an independent contractor to provide basic healthcare services to civil detainees and residents of SCC. *Id.*

According to records attached to Mr. Mitchell's response, Mr. Griffith referred Mr. Mitchell to a specialist for evaluation and "HCV treatment" in February 2005. ECF No. 61, at p. 37. Mr. Mitchell was referred to Dr. W. Michael Priebe. *Id.* In April 2005, Mr. Griffith prepared a medical summary on Mr. Mitchell which included the note: "GI (2003) for hepatitis C-treatment options outlined, but not started (patient reluctance at that point)." *Id.*, pp. 46-47.

In 2009 and 2010, Mr. Griffith discussed two primary issues with Mr. Mitchell, which included Mr. Mitchell's shoulder/upper back pain and high blood pressure. ECF No. 44, Griffith Decl., p. 2, Attachment A. Mr. Griffith learned of Mr. Mitchell's shoulder and upper back injury in September 2009. He conducted a physical examination and referred Mr. Mitchell out to physical therapy. In addition, Mr. Griffith was deeply concerned about Mr. Mitchell's ongoing high blood pressure. In March, May, and August of 2010, he encouraged Mr. Mitchell to take blood pressure medication to reduce his high blood pressure. He also continued to prescribe a low sodium diet to address Mr. Mitchell's hypertension. *Id.*, at 3. According to Mr. Griffith, the

REPORT AND RECOMMENDATION- 4

medical records demonstrate that Mr. Mitchell was not always compliant with his low sodium diet. *Id.,* Exhibit A.

On August 11, 2010, Mr. Griffith saw Mr. Mitchell for a recheck of his hypertension. At that time, Mr. Mitchell requested a specialized "Hepatitis C diet." Although Mr. Griffith attempted to direct the conversation to Mr. Mitchell's ongoing high blood pressure, Mr. Mitchell insisted on discussing the Hepatitis C diet. Mr. Griffith told Mr. Mitchell that he had no authority to order any specialized diet beyond the diets recognized by the SCC, which included a low calorie diet and/or a low sodium diet. He told Mr. Mitchell that he had no authority to prepare the type of customized diet that Mr. Mitchell was requesting. *Id.*, at p. 3. As far as Mr. Griffith is aware, there is no such thing as a medically recognized "Hepatitis C diet," and a diet that consists of fruits and vegetables, vitamin supplements, and an aversion to preservatives, is not recognized as something to combat Hepatitis C. It is Mr. Griffith's opinion that such a diet does not appear medically necessary. *Id.* However, because he wanted to remain attentive to Mr. Mitchell's needs and requests, Mr. Griffith referred Mr. Mitchell to dietician Christine Haueter to discuss Mr. Mitchell's dietary concerns.[3]

Mr. Griffith learned later that Mr. Mitchell had grieved the lack of a "Hepatitis C" diet. Mr. Griffith did not deny the grievance. The decision to deny Mr. Mitchell's request for the diet was made by SCC Superintendent Kelly J. Cunningham. ECF No. 44, Griffith Decl., p. 4, Exhibit B (letter dated October 12, 2010 from Dr. Cunningham to George Mitchell, with copies to Medical Director Les Sziebert, RN3 Kim Deitch, ARNP Randall Griffith, Dietician Christine Haueter).

---

[3] Mr. Mitchell's claims against Christine Haueter were dismissed. ECF No. 42.

REPORT AND RECOMMENDATION- 5

Mr. Griffith is aware that Mr. Mitchell met with Dr. Thomas Bell in 2009 to discuss initiating Interferon treatment and he is also aware that Dr. Bell declined Mr. Mitchell's request for Interferon treatment at that time.  According to Mr. Griffith, Mr. Mitchell did not discuss Interferon treatment with him, did not request that Mr. Griffith place him on Interferon treatment, and did not request that Mr. Griffith "override" Dr. Bell's decision.  The issue was simply not discussed during Mr. Griffith's encounters with Mr. Mitchell.  ECF No. 44, Griffith Decl., p. 2.  Moreover, some medical decisions were beyond Mr. Griffith's authority.  For example, in 2010, requests for Interferon treatment required the approval of the medical director and requests for a customized diet required the approval of the Food Services Manager.  *Id.*, p. 4.

Mr. Griffith states that he was attentive to Mr. Mitchell's medical needs by referring him to physical therapy for his upper back and shoulder pain and by attempting to prescribe appropriate medication and ordering a low sodium diet to address Mr. Mitchell's high blood pressure issues.  Even though he thought that Mr. Mitchell's request for a customized "Hepatitis C" diet lacked a medical foundation, he still referred Mr. Mitchell on to a dietician to discuss his concerns.  ECF No. 44, Griffith Decl., at p. 4.

**SUMMARY JUDGMENT STANDARD**

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). The moving party has the initial burden of production to demonstrate the absence of any genuine issue of material fact.  Fed. R. Civ. P. 56(a); *see Devereaux v. Abbey,* 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case.  *Fairbank v. Wunderman Cato*

REPORT AND RECOMMENDATION- 6

*Johnson*, 212 F.3d 528, 532 (9th Cir.2000).  A nonmoving party's failure to comply with local rules in opposing a motion for summary judgment does not relieve the moving party of its affirmative duty to demonstrate entitlement to judgment as a matter of law.  *Martinez v. Stanford*, 323 F.3d 1178, 1182-83 (9th Cir. 2003).

"If the moving party shows the absence of a genuine issue of material fact, the non-moving party must go beyond the pleadings and 'set forth specific facts' that show a genuine issue for trial."  *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)).  The non-moving party may not rely upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).  A plaintiff must "produce at least some significant probative evidence tending to support" the allegations in the complaint.  *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990).  A court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found."  *Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1031 (9th Cir. 2001).  This is true even when a party appears *pro se*.  *Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007).

**DISCUSSION**

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).  The rights of one who is civilly committed are analyzed using the same standards that apply to pretrial detainees.  *Jones v. Blanas*, 393 F.3d 918, 931–32 (9th Cir.2004).  The Eighth and

REPORT AND RECOMMENDATION- 7

Fourteenth Amendments both guarantee that inmates and detainees receive constitutionally protected medical care. *Conn v. City of Reno*, 572 F.3d 1047, 1054 (9th Cir.2009). An officer's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment, and *a fortiori*, the Fourteenth. *Id*. at 1054–55.

The "deliberate indifference" standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (*citing Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)). Second, the prison official must act with a "sufficiently culpable state of mind," which entails more than mere negligence, but less than conduct undertaken for the very purpose of causing harm. *Farmer*, 511 U.S. at 837. A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." *Id*.

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir.1980), *citing Estelle*, 429 U.S. at 105–06. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. at 106; *see also Anderson v. County of Kern*, 45 F.3d 1310, 1316 (9th Cir.1995); *McGuckin v. Smith*, 974 F.2d 1050, 1050 (9th Cir.1992), *overruled on other grounds, WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir.1997) (en banc). Even gross negligence is insufficient to establish deliberate

REPORT AND RECOMMENDATION- 8

indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir.1990).  A prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir.1989).

Mr. Mitchell contends that Defendant Griffith should have intervened and informed his superior or an outside agency that Mr. Mitchell was being subjected to medical abuse.  He contends that Defendant Griffith should have taken action after Mr. Mitchell told him that Defendant Bell was refusing to treat him.  He also contends that Defendant Griffith should have "overridden" the food services manager and provided Mr. Mitchell with a "medical diet."  ECF No. 9, pp. 10-11.

Viewing the evidence in the light most favorable to Mr. Mitchell, the Court first notes that there is no evidence that Mr. Mitchell was being "subjected to medical abuse."  The records reflect that Mr. Griffith knew that Mr. Mitchell saw Dr. Priebe in 2005 to discuss Hepatitis C treatment but Mr. Mitchell was reluctant to begin treatment at that time.  Mr. Griffith knew that Mr. Mitchell met with Dr. Thomas Bell in 2009 to discuss Interferon treatment and that Dr. Bell declined Mr. Mitchell's request for Interferon treatment at that time.  According to Mr. Griffith, Mr. Mitchell did not discuss Interferon treatment with him, did not request that Mr. Griffith place him on Interferon treatment, and did not request that he "override" Dr. Bell's decision.  ECF No. 44, Griffith Decl., p. 2.  However, Mr. Mitchell contends that on August 11, 2010, he spoke with Mr. Griffith "about [his] conversation with Defendant Bell on May 6, 2009 in detail."  ECF No. 61, at p. 3.

Although the parties dispute whether Mr. Griffith was involved in any discussion about Interferon treatment (including Mr. Mitchell's contention that Dr. Bell declined the treatment, in part, because the "treatment doesn't work on African-Americans"), it is undisputed that Mr.

REPORT AND RECOMMENDATION- 9

Griffith did not have the authority to order Inteferon treatments or to countermand medical decisions relating to Interferon treatment.  It is also undisputed that he had no authority to order a customized diet or to countermand dietary decisions made by the Food Services Manager.  ECF No. 44, Griffith Decl., p. 4.  The evidence reflects that Mr. Griffith appropriately handled Mr. Mitchell's medical complaints by referring him to physical therapy for his neck and shoulder pain and by prescribing a low sodium diet, exercise, and attempt to prescribe blood pressure medication.  When Mr. Mitchell wanted a customized diet, Mr. Griffith referred him to a dietician to address those concerns.

Mr. Mitchell has not shown that Mr. Griffith knew of and disregarded an excessive risk to his health.  Instead, it appears that Mr. Mitchell is complaining that he is being denied the type of treatment and diet that he would like to receive.  However, a claim of deliberate indifference requires more than a different of opinion between the patient and prison medical authorities regarding treatment.  *Franklin v. State of Oregon, State Welfare Div*., 662 F.2d 1337, 1344 (9th Cir. 1981)(*citing Estelle v. Gamble*, 428 U.S. at 105-107).

## CONCLUSION

Based on the foregoing, the undersigned recommends that Defendant Griffith's Motion for Summary Judgment (ECF No. 43) be **GRANTED,** and Plaintiff's claims against Defendant Griffith be **dismissed with prejudice.**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985).  Accommodating the

REPORT AND RECOMMENDATION- 10

1 | time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on
2 | **June 21, 2013**, as noted in the caption.

    **DATED** this   31st   day of May, 2013.

                                              Karen L. Strombom
                                              United States Magistrate Judge

REPORT AND RECOMMENDATION- 11